**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**AMY E. BOKOSKI,**

                                        **Plaintiff,**

**v.**

                                                                    **17-CV-1217**

**COMMISSIONER OF SOCIAL SECURITY,**

                                        **Defendant.**

_____

## DECISION AND ORDER

        Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the

undersigned conduct any and all further proceedings in this case, including entry of final

judgment.  Dkt. No. 9.  Amy E. Bokoski ("Plaintiff"), who is represented by counsel,

brings this action pursuant to the Social Security Act ("the Act") seeking review of the

final decision of the Commissioner of Social Security ("the Commissioner") denying her

application for Social Security Income ("SSI").  This Court has jurisdiction over the

matter pursuant to 42 U.S.C. § 405(g).  Presently before the Court are the parties'

competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal

Rules of Civil Procedure.  Dkt. Nos. 10, 13.

## BACKGROUND

        Plaintiff applied for SSI on February 10, 2014, alleging disability due to

bipolar disorder, depression, anxiety, agoraphobia, and panic attacks. Tr. at 217-26.[1]

_____

[1] Citations to "Tr. __" refer to the pages of the administrative transcript, which appears at Docket
No. 7.

Plaintiff's application was denied at the initial level on May 20, 2014.  Tr. at 132.  On

June 28, 2016, Plaintiff appeared with her attorney and testified at a hearing before an

Administrative Law Judge ("ALJ") along with an impartial vocational expert ("VE").

Tr. at 73-87.  In a decision entered on July 14, 2016, the ALJ found that Plaintiff "has

not been under a disability, as defined by the Social Security Act, since February 10,

2014, the date the application was filed."  Tr. at 29.  The Appeals Council denied

Plaintiff's request for review on September 27, 2017, making the ALJ's determination

the final decision of the Commissioner.  Tr. at 1-6.  Plaintiff thereafter commenced this

action seeking review of the Commissioner's final decision.  Dkt. No. 1.


Currently before the Court are the parties' cross-motions for judgment on

the pleadings.  Dkt. Nos. 10, 13.  For the reasons that follow, this Court denies Plaintiff's

motion for judgment on the pleadings and grants the Commissioner's motion seeking

the same.


## LEGAL STANDARD

**Disability Determination**

An ALJ must follow a five-step process to determine whether an individual

is disabled under the Act.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987).  At

step one, the ALJ must determine whether the claimant is engaged in substantial gainful

work activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If not,

the ALJ proceeds to step two and determines whether the claimant has an impairment,

or combination of impairments, that is "severe," meaning that it imposes significant

restrictions on the claimant's ability to perform basic work activities.
20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If not, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

**District Court Review**

42 U.S.C. § 405(g) authorizes a district court "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007). Section 405(g) limits the scope of the Court's review to two inquiries: (1) whether the Commissioner's conclusions were based upon an erroneous legal standard; and (2) whether the Commissioner's findings were supported by substantial evidence in the record as a whole. *See Green-Younger v. Barnhart*, 335 F.3d 99, 105-106 (2d Cir. 2003). Substantial evidence is "more than a mere scintilla." *Moran v. Astrue,* 569 F.3d 108, 112 (2d Cir. 2009). "It means such *relevant* evidence as a *reasonable* mind might accept as adequate to support a conclusion." *Id.* (emphasis added and citation omitted). The substantial evidence standard of review is a very deferential standard, even more so than the "clearly erroneous" standard. *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 447-48 (2d Cir. 2012) (citing *Dickinson v. Zurko,* 527 U.S. 150, 153 (1999)).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). If there is substantial evidence for the ALJ's determination, the decision must be upheld, even if there is also substantial evidence for the plaintiff's position. *See Perez v. Chater,* 77 F.3d 41, 46-47 (2d Cir. 1996); *Conlin*

*ex rel. N.T.C.B. v. Colvin*, 111 F. Supp. 3d 376, 384 (W.D.N.Y. 2015). Likewise, where

the evidence is susceptible to more than one rational interpretation, the Commissioner's

conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir.

1982).


## DISCUSSION AND ANALYSIS

**The ALJ's Decision**

ALJ Christine A. Cooke analyzed Plaintiff's claims using the familiar five-

step process described above. *Lynch v. Astrue*, No. 07-CV-249, 2008 WL 3413899, at

*2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps). At step one, the ALJ found that

Plaintiff had not engaged in substantial gainful activity since February 10, 2014, her

alleged onset date. Tr. at 20.[2] At step two, she found that Plaintiff had the following

severe impairments: anxiety disorder and affective disorder. Tr. at 20. At step three,

the ALJ concluded that Plaintiff's impairments did not, either individually or in

combination, meet or equal the Listings, specifically, Listing 12.04 (depressive, bipolar

and related disorders) and Listing 12.06 (anxiety and obsessive-compulsive disorders).

Tr. at 21-22; *see* 20 C.F.R. § Pt. 404, Subpt. P, App. 1.


Next, the ALJ found that Plaintiff retained the RFC to perform a full range

of work at all exertional levels but with the following non-exertional limitations: she must

have duties that are simple, repetitive and routine in nature; she should never be

---

[2] Plaintiff applied for Disability Insurance Benefits ("DIB") and SSI several times prior to February 10, 2014. Each of these claims was denied at the initial level, or dismissed or denied at the Appeals Council level in 2011 and 2013. Tr. at 88-92, 96, 93-113, 114-119, 122, 208.

expected to exercise independent judgment regarding the nature of her job duties, and

the duties must be consistently the same with little or no change; she is limited to duties

that are low in stress, defined as never having duties that require commission sales or

piecework; she should never travel to perform her duties except to and from one

primary job location; she should never have duties that require interaction with the

public; she can, however, have up to occasional contact with co-workers and

supervisors.  Tr. at 22-28.  Continuing to the fourth step, the ALJ found that Plaintiff had

no past relevant work.  Tr. at 28.

At step five, considering Plaintiff's status as a younger person (34 years

old) with a high school education, ability to communicate in English, no past work

experience and the aforementioned RFC, the ALJ relied on the testimony of the VE in

concluding that Plaintiff could perform work that exists in the national economy.  Tr. at

32.  Specifically, the VE opined that Plaintiff could work as a dishwasher, laundry

worker, and industrial cleaner, jobs which exist in significant numbers in the national

economy.  Tr. at 29.  Accordingly, the ALJ concluded that Plaintiff was not disabled from

February 10, 2014, the date her application was filed.  Tr. at 29.

**Assessment of Plaintiff's Severe Mental Impairments**

Plaintiff raises one argument in support of her motion, specifically, that the

ALJ failed to evaluate Plaintiff's bipolar disorder "and its ramifications" at step two and

that this error "invalidates" her disability determination.  Dkt. No. 10-1, p. 10.  Plaintiff

contends that if the ALJ had properly considered Plaintiff's bipolar disorder, she would

have understood that Plaintiff's failure to go to therapy and take her medications was a symptom of bipolar disorder rather than "non-compliance with treatment;" and that Plaintiff's inconsistent behaviors were due to impulsivity rather than her lack of credibility. This Court does not agree for several reasons.

As previously noted herein, the ALJ concluded that Plaintiff had anxiety disorder and affective disorder, both severe impairments. Tr. at 20.[3] Bipolar disorder is one of several types of affective disorders. Dkt. No. 13-1, p. 21 (citing https://www.healthline.com/health/affective-disorders#types (last viewed June 25, 2019)). The fact that the ALJ found that Plaintiff suffered from a mental condition within the same class as bipolar disorder undermines Plaintiff's argument that she did not consider it as a possible impairment.

Moreover, at step three, the ALJ analyzed whether Plaintiff's impairments met or medically equaled Listing 12.04, which covers depressive, bipolar and related disorders. 20 C.F.R. § Pt. 404, Subpt. P, App. 1. Where, as here, an ALJ proceeds past step two and considers the effects of all of a claimant's impairments, any error at step two is harmless. *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (citing *Zabala v. Astrue,* 595 F.3d 402, 410 (2d Cir. 2010)). Under a "specialized variant

---

[3] The ALJ also noted that Plaintiff had a history of alcohol and drug dependence. Plaintiff testified that she had lost her license because of a DWI approximately 8 and ½ years earlier, but that she stopped drinking alcohol about a month before the hearing "because she thought it was no longer necessary." Tr. at 21. Consistent with Plaintiff's testimony and her treatment records indicating that she drank 2-3 alcoholic beverages once or twice a week, the ALJ found that her "amount of [drug and alcohol] use was not so great as to be disabling." Tr. at 21.

of harmless-error analysis" of step two severity errors, "[w]hen an administrative law judge identifies some severe impairments at Step 2, and then proceeds through [the] sequential evaluation on the basis of [the] combined effects of all impairments, including those erroneously found to be non-severe, an error in failing to identify all severe impairments at Step 2 is harmless."  *Poles v. Berryhill*, No. 17CV6189(MAT), 2018 WL 1471884, at *3 (W.D.N.Y. Mar. 26, 2018) (quoting *Snyder v. Colvin*, No. 5:13-CV-585 GLS/ESH, 2014 WL 3107962, at *5 (N.D.N.Y. July 8, 2014)).

        In this context, this Court finds that the ALJ did not err in finding that Plaintiff's failure to go to therapy or take her medications undermined her claim of severe mental impairment.  The record shows that Plaintiff was encouraged to participate in counseling sessions, but she only went to Hamburg Counseling ("HC") a few times, missed several counseling sessions, then failed to return or respond to HC's attempts to contact her and was discharged from their care.  Tr. at 388-91.  Plaintiff complained to RPA Kristin Mulligan ("PA Mulligan") of DENT Neurologic Institute ("DENT") that she did not "connect" with her HC therapist.  Tr. at 427.  At the hearing, Plaintiff testified that she could not maintain therapy because "a lot of times when they ask all the questions that bring up my past I get really upset and I don't want to talk about it."  Tr. at 83.  "I get a lot of feelings with it," she stated.  Tr. at 83.

        Plaintiff also failed to take her medications or call for a refill on numerous occasions, or would get prescriptions from more than one practitioner, or would not fill out her medication assessments properly.  Tr. at 427 (Plaintiff told PA Mulligan of DENT

on 10/7/2014, that she failed to refill her Xanax); Tr. at 421 (Plaintiff admitted to PA Mulligan of DENT on 3/15/2015 that she had been completing mental health assessments based on how she thought she would feel without her medications, rather than how she actually feels while on her medications); Tr. at 416 (Plaintiff told Dr. Horatio Capote of DENT on 6/4/2015 that she had run out of both Xanax and Adderall); Tr. at 413 (Plaintiff complained to PA Mulligan of DENT on 6/12/2015 about being weaned off benzodiazepines due to risk of alcohol abuse relapse, even though she had a well-documented history of alcohol abuse); Tr. at 410 (Plaintiff admitted to PA Mulligan of DENT on 7/28/2015, that she had discontinued taking Effexor and Fanapt on her own, PA Mulligan advised that they were aware that Plaintiff had gotten prescriptions for Clonazepam and Adderall from her primary care physician, Dr. Thomas Small, and warned that if Plaintiff continued to get controlled scripts from other providers, DENT might have to discharge her from care); Tr. at 447 (Plaintiff confessed to Dr. Syed Ahmed on 11/14/2015 that she failed to take all her medications as prescribed); Tr. at 451 (Plaintiff admitted to Dr. Ahmed on 1/22/2016 that she was only partially compliant with her medication); Tr. at 457 (Plaintiff reported to Dr. Ahmed that she did not start Wellbutrin as he prescribed because she did not want to experience sexual side effects, which Dr. Ahmed indicated was not a side effect of the medicine).

Plaintiff argues that the only explanation for Plaintiff's conduct is that she suffers from bipolar disorder which "affects an individual's ability to comply with treatment."  Dkt. No. 10-1, p. 12.  This Court is not persuaded.  As an initial matter, Plaintiff herself offered other reasons to explain her failure to do what her doctors told

her to do.  For example, she reported that she could not make her appointments because she did not have a driver's license, lived in a rural area, lived on a steep hill that was dangerous to drive on in winter, did not have a reliable truck, and her boyfriend needed the truck to get to work.  Tr. at 77, 310, 389, 390.  She told PA Mulligan and Dr. Ahmed that she unilaterally decided to discontinue or not start certain medications due to perceived side effects.  Tr. at 410, 457.  The ALJ found that these episodes of non-compliance with her treatment and medication showed that she was not as limited as she claimed.  Although Plaintiff disagrees with the ALJ's analysis, this does not compel a different outcome.  As the Second Circuit Court of Appeals has held, the substantial evidence standard is so deferential, "two contrary rulings on the same record may be affirmed as supported by substantial evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 127 (2d Cir. 2012) (citing *Consolo v. Fed. Maritime Comm'n,* 383 U.S. 607, 620 (1966)).

Plaintiff criticizes the ALJ for citing to evidence that during the disability period, Plaintiff went to Florida to visit her mother and went to Disney World, and just prior to the alleged onset date, Plaintiff got drunk in a bar, left with a man that she met there, gave him the keys to her truck and was thereafter robbed and choked as evidence that Plaintiff was not homebound as she alleged at the hearing.  Tr. at 24.[4] Plaintiff contends that she did not in fact enjoy her day at Disney and accuses the ALJ of "blam[ing] the victim" for the robbery.  Dkt. No. 10-1, p. 16.  Specifically, Plaintiff

---

[4] Plaintiff testified that she never left the house alone, that she could not remember the last time she left the house, that she had severe panic attacks out in public, and had a hard time being around people.  Tr. at 80, 82-83.

argues that drinking, going to a bar alone, and leaving with someone she did not know was "risky behavior that could be linked to her bipolar disorder . . . ." Dkt. No. 10-1, p. 16. This is highly speculative and not a sufficient basis to disturb the ALJ's finding that although Plaintiff suffered from severe mental impairments she nonetheless could work with significant non-exertional limitations to account for her mental conditions. To reiterate, those limitations included limiting her duties to those that were simple, repetitive, and routine, low in stress, that had little or no change, with strictly limited travel, never requiring interaction with the public, and limiting contact with co-workers and supervisors to occasional. Tr. at 23.

This Court notes that several of Plaintiff's treating providers also documented doubts about her subjective complaints of disabling mental symptoms. By way of example, Gregory Groth, RPA-C ("PA Groth") at DENT noted that Plaintiff "speaks of having 'no motivation'" and "prefer[ring] to stay in bed," but "ironically [she] tells me that she enjoys using a bow and arrow set for target practice in her backyard." Tr. at 436. On June 4, 2015, Dr. Capote documented that Plaintiff claimed to have been sober for 8 months and only drank when she became depressed when her stepmother died. Tr. at 416. "[A]lthough interestingly enough," Dr. Capote noted, "she cannot recall when her stepmother died, either 1 or 2 months ago." Tr. at 416. Moreover, during this alleged period of sobriety, Plaintiff reported that she drank weekly. Tr. at 421 (March 2015); 424 (January 2015); 427 (October 2014). Revealing yet another inconsistency, Plaintiff reported to Catholic Charities that she drank weekly until May 13, 2016. Tr. at 471.

Clearly, Plaintiff disagrees with the ALJ's suggestion that she was less than credible in her representations regarding her mental limitations. However, this does not compel a finding that she has a disorder (bipolar), which would somehow excuse her noncompliant behavior and her forays into public amusement parks and bars while purporting to be debilitated by agoraphobia. "Under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position." *Hanson v. Comm'r of Soc. Sec.*, No. 315CV0150GTSWBC, 2016 WL 3960486, at *12 (N.D.N.Y. June 29, 2016), *report and recommendation adopted sub nom. Hanson v. Colvin*, No. 315CV150GTSWBC, 2016 WL 3951150 (N.D.N.Y. July 20, 2016). Rather, a plaintiff must show "that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in [the] record." *Id.* (citing *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012)); *see also Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute their own judgment even if they might justifiably have reached a different result upon a *de novo* review).

Given this highly deferential standard of review, this Court finds that the ALJ's step two severity finding was harmless and that her RFC determination is supported by substantial evidence.

## CONCLUSION

For the reasons stated herein, Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is hereby DENIED, and the Commissioner's motion for judgment on the pleadings (Dkt. No. 13) is GRANTED. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

DATED:     Buffalo, New York
           June 26, 2019

                          *s/ H. Kenneth Schroeder, Jr.*
                          **H. KENNETH SCHROEDER, JR.**
                          **United States Magistrate Judge**